UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| **JAMES R. HARRIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | ) Case No. 07-2210 |
| **JAT TRUCKING OF ILLINOIS, INC.,** | ) |
| doing business as JAT Transportation, | ) |
| et al., | ) |
| | ) |
| **Defendants.** | ) |

# REPORT AND RECOMMENDATION

In November 2007, Plaintiff James Harris filed a Complaint (#1) against Defendants, JAT Trucking of Illinois, Inc., Order Logistics, Inc., Brian Griffin, Paul McCreary, Brian Malec, Gayle Frerichs, Gayle Frerichs Trucking, LLC, Personal Care Insurance of Illinois Plan of JAT, and Personal Care Health Management, Inc., alleging violations of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") (29 U.S.C. § 1001 *et seq.*). In June 2008, Plaintiff filed his First Amended Complaint (#44) and, in February 2009, Plaintiff filed a Second Amended Complaint (#71). Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331 because Plaintiff has alleged violations of federal law.

In December 2008, Defendant JAT Trucking of Illinois, Inc. filed a Motion To Dismiss Counts I, IV, V, VI, VII and VIII of Plaintiff's First Amended Complaint (#66). In March 2009, Plaintiff filed his Opposition to Motion To Dismiss First Amended Complaint of Defendant JAT (#83). After reviewing the parties' pleadings and memoranda, this Court recommends, pursuant to its authority under 28 U.S.C. § 636(b)(1)(B), that Defendant JAT's Motion To Dismiss Counts I, IV, V, VI, VII and VIII of Plaintiff's First Amended Complaint **(#66)** be **GRANTED** in part and **DENIED** in part.

## I. Background

The first amended complaint added a new Defendant, Sam McDonald, and changed the name of Defendant Personal Care Health Management, Inc., to Defendant PCI. The amended

complaint also made changes to some of the claims. The second amended complaint differs from the first amended complaint in the prayer for relief, but the claims do not appear to be substantively different. Accordingly, the Court will consider Defendant's motion to dismiss as to the second amended complaint.

The following background is taken from the second amended complaint. Plaintiff worked for Defendant JAT Trucking of Illinois, Inc. (hereinafter "JAT") from May 2006 until February 23, 2007. During his employment, Plaintiff purchased health insurance by participating in the Personal Care Insurance of Illinois Plan of JAT (hereinafter "PCI Plan" or "Plan"), a group insurance Plan. Defendant PCI administered the Plan. (#71, ¶¶ 14, 15.) McDonald was an administrator of Defendant Plan and a fiduciary with regard to the Plan within the meaning of ERISA. (#71, ¶ 36.) The Plan called for JAT to deduct $35 per week from Plaintiff's wages and remit that amount to PCI on behalf of the Plan to pay for Plaintiff's health insurance coverage. On about January 1, 2007, JAT stopped remitting payments on behalf of the Plan, although JAT continued to deduct the premiums from Plaintiff's wages.

Regarding Defendants Frerichs and Gayle Frerichs Trucking, LLC (hereinafter "GFT"), Plaintiff alleges that, while he was employed by JAT, Defendant Frerichs was directly responsible for remitting premiums to the Plan. On about February 23, 2006, GFT acquired JAT and the two entities merged. GFT assumed JAT's liabilities and obligations and continued the JAT enterprise with continuity of management, personnel, physical location, assets, and general business operations. Thus, GFT is a "successor employer" for purposes of ERISA. As such, GFT assumed JAT's duty to inform Plaintiff regarding his election rights under the Consolidated Omnibus Budget Reconciliation Act (hereinafter "COBRA") (42 U.S.C. § 300bb-1 *et seq.*), and the duty to enroll Plaintiff into a health care plan, pursuant to COBRA, for the duration of Plaintiff's eligibility period. *See* 26 C.F.R. § 54.4980B-9.

During February, March, and April 2007, Defendants PCI and PCI Plan represented to Plaintiff, by payments for services rendered to Plaintiff, that Plaintiff had full coverage under the Plan. Nevertheless, in May 2007, Plaintiff was informed that PCI had retroactively cancelled the

PCI Plan as of December 31, 2006, due to Defendant JAT's failure to pay the premiums during January and February 2007. Plaintiff had not been informed that his coverage had been terminated or of his right to elect to receive continuing health care coverage pursuant to COBRA.

On about February 23, 2007, Plaintiff was diagnosed with kidney cancer and required immediate medical treatment, including surgery. As a result, Plaintiff has incurred and will continue to incur substantial health care costs. The Plan has denied Plaintiff insurance coverage benefits as a result of Defendant JAT's failure to remit insurance premiums to the Plan administrator and the subsequent cancellation of Plaintiff's insurance coverage effective December 31, 2006.

Plaintiff alleges that Defendant Order Logistics, Inc. (hereinafter "OL"), was and is the parent corporation of Defendant JAT and that OL controlled JAT's corporate actions and activities. He also alleges that OL is the instrumentality and alter ego of Defendants Griffin, McCreary, and Malec.

Plaintiff has alleged 12 claims in the amended complaint. Count I, against Defendants JAT and PCI Plan, alleges a claim for recovery of benefits under Section 1132(a)(1)(B) of ERISA. Count II alleges that JAT, PCI Plan, Frerichs, and McDonald breached their fiduciary duty under Section 1132(a)(3) of ERISA. Count III, against JAT and GFT, alleges that Defendants failed to provide the required COBRA election notice. Count IV, against JAT and PCI Plan, alleges fraud. Count V, against JAT, alleges breach of contract. Count VI, against JAT, alleges negligent infliction of emotional distress. Count VII, against JAT, alleges intentional infliction of emotional distress. Count VIII, against JAT and PCI Plan, alleges violations of the Illinois Consumer Fraud and Deception Business Practices Act (815 ILCS 505/1 *et seq.*) (hereinafter "ICFA"). Count IX, against Defendant OL, seeks recovery on an alter ego theory. Count X, against Defendants Griffin, McCreary, and Malec, seeks recovery on an

alterego theory. Count XI alleges that PCI Plan and PCI breached their fiduciary duty to Plaintiff. Count XII, against Defendants PCI Plan and PCI, alleges estoppel to deny insurance coverage.

## II. Standard

The purpose of a motion to dismiss for failure to state a claim is to test the sufficiency of the complaint, not to decide the merits of the case. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The United States Supreme Court has interpreted this language to impose two "easy-to-clear hurdles": First, the plaintiff must plead sufficient facts to give a defendant fair notice of the claim and the grounds upon which it rests, and second, those facts, if true, must plausibly suggest that the plaintiff is entitled to relief, "raising that possibility above a 'speculative level'." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776-77 (7th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss for failure to state a claim, the Court is limited to the allegations contained in the pleadings. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Furthermore, the Court must treat all well-pleaded allegations in the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *McMillan v. Collection Prof'ls, Inc.,* 455 F.3d 754, 758 (7th Cir. 2006); *see Bell Atl.*, 550 U.S. at 555-56 (requiring plausible grounds for inferences if those inferences are to sustain a complaint).

## III. Analysis

Defendant JAT argues that the Court should dismiss the claims against it in Counts I, IV, V, VI, VII, and VIII for the following reasons: (1) As to Count I, the Plan is the only proper defendant to a claim brought pursuant to 29 U.S.C. § 1132(a)(1)(B) of ERISA; (2) the state law claims in Counts IV, V, VI, VII, and VIII are subject to conflict preemption under 29 U.S.C. § 1144(a); and (3) alternatively, the Court should dismiss Count VI based on the exclusivity provision of the Illinois Worker's Compensation Act (820 ILCS 305/1 *et. seq.*).

4

### A. Claim for Recovery of Benefits under ERISA (Count I)

Defendant first contends that the Court should dismiss the ERISA claim in Count I because the Plan is the only proper defendant to a claim brought pursuant to 29 U.S.C. § 1132(a)(1)(B) of ERISA. *Black v. Long Term Disability Ins.*, 373 F. Supp. 2d 897, 899 (E.D. Wis. 2005) ("In the Seventh Circuit, the general rule with respect to a § 1132(a)(1)(B) claim for benefits is that the only appropriate defendant is the Plan.") (citing *Blickenstaff v. R. R. Donnelly Co.*, 378 F.3d 669, 674 (7th Cir. 2000)).

Plaintiff responds that the Seventh Circuit court has acknowledged an exception to this general rule where the interests of the Plan and the employer are intertwined. *See Mein v. Carus Corp.*, 241 F.3d 581, 585 (7th Cir. 2001) (holding that the employer is a proper defendant to an ERISA claim when the employer and the plan are "closely intertwined"). Specifically, Plaintiff contends that Defendant JAT has commingled the assets of the Plan with its own assets by using employee contributions earmarked for the Plan for JAT operations and by failing to maintain an arm's-length relationship between itself and the Plan. Plaintiff argues that the "commingling" conduct resulted in JAT assuming the role of *de facto* plan administrator because JAT's failure to remit contributions to the Plan resulted in the "denial" of all benefits because all coverage under the Plan ended. Plaintiff's argument that JAT became the *de facto* administrator by allowing the Plan to lapse is creative but unpersuasive. Such reasoning would result in the exception swallowing the rule because any employer who remits premiums to the plan administrator could be said to have the same power. *See Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 783 (7th Cir. 2005) (stating that employers are "generally free . . . for any reason at any time, to adopt, modify or terminate welfare plans") (quoting *Curtiss-Wright Corp. v. Schoonejongen,* 514 U.S. 73, 78 (1995)).

Plaintiff also argues that a number of recent Seventh Circuit court decisions have permitted an employee to sue both the Plan and the employer or have allowed cases naming the employer as the defendant to proceed; as a result, the adoption and acceptance of the general rule

5

described in *Black* is questionable. *See, e.g., Bland*, 401 F.3d 779; *Olander v. Bucyrus-Erie Co.*, 187 F.3d 599 (7th Cir. 1999); *Anstett v. Eagle-Picher Inds., Inc.*, 203 F.3d 501 (7th Cir. 2000). These cases do not address the issue or explain why the court permitted the plaintiffs to sue the employer.

As Plaintiff has pointed out, courts within the Seventh Circuit recognize two general exceptions to the rule that ERISA claims are to be brought against a plan: situations where the plan and the employer are closely intertwined and situations where the plaintiff cannot readily identify the plan. *See Black*, 373 F. Supp. 2d at 900. Here, the amended complaint includes the Plan as a party to the suit, therefore, this is not a situation where the plan entity cannot be identified. In addition, as noted above, the amended complaint includes no allegations from which the Court could infer that the Plan and JAT's interests are closely intertwined. *See Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993) (stating that it is well established that a plaintiff cannot amend her complaint through arguments presented in her legal memoranda). Therefore, Plaintiff's claim against JAT is not subject to the commingling exception to the general rule. Because the limited exceptions recognized by the Seventh Circuit court do not apply to Plaintiff's ERISA claim, Seventh Circuit precedent controls and the Court recommends dismissing JAT from Plaintiff's Section 1132(a)(1)(B) claim in Count I with leave to amend.

### B. Conflict Preemption

Defendant next argues that the state law claims of fraud (Count IV), breach of contract (Count V), negligent infliction of emotional distress (Count VI), intentional infliction of emotional distress (Count VII), and violation of the ICFA (Count VIII) are subject to conflict preemption under 29 U.S.C. § 1144(a).

The doctrine of conflict preemption serves as a defense to a state law action. *Speciale v. Seybold*, 147 F.3d 612, 615 (7th Cir. 1998). Conflict preemption in the ERISA context is based on Section 514(a) of ERISA which provides that ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered under ERISA. 29 U.S.C. § 1144. The structure and legislative history indicate that the words "relate to" are

intended to apply in their broadest sense. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 98 (1983). A state law "relates to" an employee benefit plan if it "has a connection with or a reference to such a plan." *Id.* at 97; *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987). A law is "connected to" an employee benefit plan if the existence of a plan is "a critical factor in establishing liability." *Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 139 (1990). ERISA preempts state law tort or contract claims that are essentially suits for benefits. *Lister v. Stark*, 890 F.2d 941 (7th Cir. 1989) (holding that ERISA preempted a participant's claims for fraud and breach of oral contract to modify pension plan).

The Supreme Court has identified at least three situations where a state law can be said to have a "connection with" or "reference to" employee benefit plans; when it (1) mandates employee benefit structures or their administration; (2) binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself; or (3) provides an alternative enforcement mechanism to ERISA. *N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 658, 659-60, 658 (1995). The parties appear to agree that only the third situation is at issue here; that is, whether Plaintiff's state law claims are alternative attempts to enforce the employee benefit plan.

The Supreme Court has also identified two categories of state laws that act as alternative enforcement mechanisms to ERISA, including (1) where the existence of a benefit plan is a critical element of a state-law cause of action, and (2) where a state statute contains provisions that expressly refer to ERISA or ERISA plans. *Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 776 (7th Cir. 2002). Only the first category is relevant to Plaintiff's state-law claims.

### 1. Fraud Claim

Defendant argues that ERISA preempts the fraud claim in Count IV as to JAT because (1) as a general rule, ERISA preempts state law fraud claims (*see Reilly v. Blue Cross & Blue*

7

*Shield United of Wis.*, 846 F.2d 416, 426 (7th Cir. 1988)); (2) the fraud claim is not separate and distinct from the Plan; (3) the Court will have to examine the Plan in order to rule on the fraud claim; and (4) Count IV contains many references to the Plan.

Plaintiff responds that the Seventh Circuit court requires more than that a claim refer to a plan before it will find conflict preemption; instead, "the state law at issue [must have] relied, for its very operation, on a direct and unequivocal nexus with ERISA plans." *Biondi*, 303 F.3d at 778. Plaintiff contends that, like the fraud claim in *Biondi*, his fraud claim does not relate to the Plan. The Court agrees.

In *Biondi*, the defendant sued a plan participant who lied about the status of his ex-wife so that she would continue to be covered by his health insurance plan. The court stated that the plaintiff's common law fraud claim did not implicate any of ERISA's fundamental concerns; instead, the plan was merely the context in which the defendant purportedly committed fraudulent concealment. The court concluded that the defendant had a separate and distinct duty under Illinois tort law not to make fraudulent misrepresentations in connection with an ERISA plan. *Id*. at 780. The court stated that "a plan participant's decision to commit fraud in the context of an employee benefit plan does not immunize him from tort liability under state law." *Id*. at 779. The court also held that ERISA preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan, but a state-law claim is not expressly preempted under Section 1144(a) merely because it requires a cursory examination of ERISA plan provisions. *Id.* at 780 (citing *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1472 (4th Cir. 1996)).

Here, Plaintiff's fraud claim does not relate to the Plan or require the Court to interpret or apply any of the Plan's provisions. Instead, it concerns JAT's improper use of money deducted from Plaintiff's paycheck, and the Plan is merely the context in which the fraudulent conduct occurred. *See, e.g., Cent. Laborers Welfare Fund v. Philip Morris, Inc.*, 85 F. Supp. 2d 875, 891

(S.D. Ill. 1998) (holding that the court could resolve the claims, one of which was for common law fraud, without interpreting the employee benefit plan where "[t]he meaning of the subrogation clause is not at issue . . . [and] the Plaintiffs are attempting to recover monies . . . expended for plan participants' or beneficiaries' health care . . . [not] monies on behalf of the plan participants or beneficiaries").

Plaintiff also contends that, even if the Plan required JAT to collect the money from employees and forward it to the insurer, the fact that JAT misrepresented its failure to do so does not make the Plan a "critical element" of the fraud count. Plaintiff contends that the Plan is "merely the context in which the fraudulent conduct occurred" as was the case in *Biondi*. *Id*. at 779.

In *Ingersoll-Rand*, the Supreme Court stated that when the existence of an ERISA plan was a "critical element" in establishing liability, such that under the state law there is no cause of action if there is no ERISA plan, then the law relates to ERISA and is preempted. *Ingersoll-Rand*, 498 U.S. at 140. The Seventh Circuit court construed this conclusion narrowly, stating that it was limited to "a claim where the state law at issue relied, for its very operation, on a direct and unequivocal nexus with ERISA plans." *Biondi*, 303 F.3d at 778. Consistent with the analysis in *Ingersoll-Rand*, the *Biondi* court ultimately held that "a plan participant's decision to commit fraud in the context of an employee benefit plan does not immunize him from tort liability under state law." *Id.* at 781.

As in *Biondi*, the state law fraud claim here does not rely on a direct and unequivocal nexus with the Plan. The claim in this case is similar to the claim in *Biondi* in that JAT had an obligation that was separate from its ERISA obligations not to deduct an amount for health care premiums from Plaintiff's paycheck and then fail to pay those premiums. Although here, as in *Biondi*, the alleged fraudulent conduct occurred in the context of an employee benefit plan, in this factual setting, the Plan is not a critical element of the fraud claim. Accordingly, the Court recommends denying the motion to dismiss the fraud claim based on conflict preemption.

## 2. Breach of Contract Claim

Defendant argues that the breach of contract claim is also subject to conflict preemption because (1) Count V refers to the plan; (2) it is impossible to resolve the claim without referring to the Plan because JAT's contractual obligations regarding medical and health coverage that give rise to the breach of contract claim are found in the language of the Plan; and (3) it is immaterial that the breach of contract claim involves the alleged failure of JAT to provide the expected benefits plan, rather than the specific enforcement of an active benefits plan.

Again, the only issue is whether Plaintiff's claim constitutes an alternative enforcement mechanism and, within that category, whether the existence of a welfare benefit plan is a critical element of a state-law claim.

As noted above, the fact that the claim refers to the Plan is not enough to establish conflict preemption. *Biondi*, 303 F.3d at 778.

Defendant's second argument is based on the premise that the breach of contract claim relies on the obligations regarding medical and health coverage in the language of the Plan; that is, JAT breached the ERISA plan itself. As a result, Defendant contends that it is impossible to resolve the claim without referring to the Plan. Plaintiff responds that Defendant's premise is incorrect; instead, the breach of contract involves JAT's failure to properly apply Plaintiff's payroll deductions.

ERISA preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan, but a state-law claim is not expressly preempted under

Section 1144(a) merely because it requires a cursory examination of ERISA plan provisions. *Biondi*, 303 F.3d at 780.

The complaint alleges that JAT's obligation to maintain insurance under the Plan and to contribute a share of the premiums for Plaintiff's insurance arose as a result of an agreement in "consideration of services Plaintiff rendered." (#71, ¶ 68.) At this point, the Court must accept as true Plaintiff's well-pleaded allegations. Here, Plaintiff has alleged that the agreement that was breached is distinct from the Plan. Based on the language of the complaint, Plaintiff has alleged nothing from which the Court can infer that JAT's obligation to remit the payroll deductions to the Plan arises from the language of the Plan itself. Therefore, Plaintiff's claim does not require the Court to interpret or apply any of the Plan's provisions. *See, e.g., Cent. Laborers*, 85 F. Supp. 2d at 891 (holding that the court could resolve the claims without interpreting the employee benefit plan).

Regarding Defendant's third argument, Defendant relies on *Bartholet v. Reishauer*, in which the claim involved the employer's failure to live up to an alleged promise to provide a benefit plan. *Bartholet v. Reishauer*, 953 F.2d 1073, 1076-77 (7th Cir. 1992). The Seventh Circuit court held that such a claim relates to an ERISA plan and is preempted. *Id.* at 1076-77. That case is not helpful; Plaintiff has not alleged that JAT failed to provide the benefit plan, but that it failed to remit to the Plan its contribution or the payments that it deducted from Plaintiff's paycheck.

Like the fraud claim, the purported breach of contract occurred "in the context of" the Plan, but the Plan itself was not a critical element of the breach. Accordingly, the Court recommends denying the motion to dismiss the breach of contract claim in Count V on the basis of preemption.

### 3. Claims of Negligent and Intentional Infliction of Emotional Distress

Defendant next argues that the claims of negligent and intentional infliction of emotional distress are preempted because (1) these counts repeatedly refer to the Plan; and (2) the claims are closely intertwined with the Plan.

Plaintiff responds that these claims do not relate to any term of an ERISA plan and they can be resolved without reference to any of the Plan provisions.

Plaintiff's negligent IED claim alleges that JAT had a duty to exercise due care in remitting health insurance premiums on behalf of Plaintiff and other Plan participants, JAT breached its duty to Plaintiff by negligently failing to remit the premiums, and JAT knew that failing to provide health insurance would result in great emotional distress.  Plaintiff's IIED claim alleges that JAT stopped remitting premiums to the Plan administrator, knowing that its conduct would cause severe emotional distress to Plaintiff who would need treatment.

The Court agrees with Defendant.  In general, diverting money might not give rise to severe emotional distress.  If JAT had, for example, deducted money from an employees paycheck to pay for mandatory uniforms and then failed to remit payments for uniforms, the degree of emotional distress would be relatively minor.  However, diverting money that was earmarked to pay for an employee's health insurance is a different matter.  Here, the fact that JAT's conduct at issue was related to the provision of medical insurance is what exacerbates the level of emotional distress.  Thus, even though the Court will not have to interpret the Plan, it is more than just a backdrop to these claims; it is a critical element because of the significance of the consequences of JAT's conduct.  Accordingly, the Court concludes that ERISA preempts these claims and recommends granting the motion to dismiss Counts VI and VII.

#### 4.  Illinois Consumer Fraud Act Claim

Defendant next argues that the Court should dismiss the ICFA claim in Count VIII because the claim is based on the existence of the Plan and JAT's representations with respect to the Plan; therefore, the existence of the Plan is a critical factor in the claim.  In addition, Defendant contends that ERISA should preempt the claim because one of the purposes of ERISA is to require employers to be thorough and truthful with regard to employee benefits plans. *Anderson v. Humana, Inc.*, 24 F.3d 889, 891 (7th Cir. 1994).  Defendant states that if the ICFA claim is not dismissed, the Court would be allowing Plaintiff to use state law to accomplish something that is more appropriately accomplished pursuant to ERISA.

Plaintiff responds that the same analysis set forth in *Biondi* regarding the fraud claim applies to the ICFA claim:  The Plan is not a critical element of the claim because the claim arises from JAT's misrepresentations that the deductions from Plaintiff's paycheck would be applied in a particular manner.

In Count VIII, Plaintiff alleges that JAT engaged in unfair and deceptive acts when it represented to Plaintiff that it was remitting the wage deductions marked "Health Insurance" to the Plan administrator to pay for insurance coverage under the Plan.  In January 2007, JAT stopped remitting the premiums to the Plan administrator, thereby making its representations false and misleading.

The Court need not reach Defendant's preemption arguments because Plaintiff lacks standing to raise this claim under the ICFA.  *See, e.g., McCarter v. State Farm Mut. Auto. Ins. Co.*, 473 N.E.2d 1015, 1018 (Ill. App. Ct. 1985) (holding that the plaintiff did not have standing to bring a ICFA claim because the ICFA claim was not a claim between a purchaser and seller of insurance and the plaintiff was not a consumer vis-a-vis the insurer).

The Illinois Consumer Fraud and Deceptive Practices Act ("ICFA") prohibits the use of deceptive acts or practices in the conduct of trade or commerce. 815 ILCS 505/2. The terms "trade" and "commerce" mean the "advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article." 815 ILCS 505/1(f). Here, Plaintiff's claim does not involve trade or commerce as defined by the ICFA.

Furthermore, the ICFA is primarily aimed at protecting consumers. *See* 815 ILCS § 505/1; *see also Stepan Co. v. Winter Panel Corp.,* 948 F. Supp. 802, 805 (N.D. Ill. 1996). Under the statute, the term "consumer" means "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS § 505/1(e). In context of the ICFA, "merchandise" includes services such as the sale of insurance. *Leona's Pizzeria, Inc. v. Nw. Nat'l Cas. Co.*, 203 F. Supp. 2d 930, 933 (N.D. Ill. 2002)). Thus, insureds such as Plaintiff are consumers with respect to insurance companies. However, JAT is not in the business of selling insurance and Plaintiff has not alleged that he purchased insurance or any other merchandise from JAT.

Alternatively, a plaintiff who is not a consumer can only maintain an ICFA claim by alleging a "consumer nexus." *Athey Prods. Corp. v. Harris Bank Roselle,* 89 F.3d 430, 436-37 (7th Cir. 1996). A consumer nexus "involves trade practices directed to the market generally or otherwise implicates consumer protection concerns." *Id.* at 437. Here, Plaintiff has not alleged a consumer nexus, and indeed, based on his allegations, the deceptive trade practices that he alleges were not "directed to the market generally." Instead, JAT's allegedly false statements were made to Plaintiff and other employees, not to the general public. Furthermore, Plaintiff has not alleged how these statements could implicate consumer protection concerns. Accordingly, the Court recommends dismissing the ICFA claim in Count VIII.

### C.  Exclusivity Provision of the Illinois Worker's Compensation Act

Finally, Defendant also argues that, in addition to being subject to conflict preemption, the Court should dismiss Count VI based on the exclusivity provision of the Illinois Worker's Compensation Act (820 ILCS 305/1 *et. seq*.).  Because the Court has concluded that ERISA preempts Plaintiff's claim of negligent infliction of emotional distress, the Court need not consider this argument.

### IV.  Summary

For the reasons stated above, this Court recommends that Defendant JAT's Motion To Dismiss Counts I, IV, V, VI, VII and VIII of Plaintiff's First Amended Complaint **(#66)** be **GRANTED** as to Counts I, VI, VII, and VIII and **DENIED** as to Counts IV and V.  Because it is conceivable that Plaintiff can amend his complaint to state a claim in Count I, the Court recommends that Plaintiff be granted leave to file an amended complaint within 14 days of the order ruling on the motion.

The parties are advised that any objection to this recommendation must be filed in writing with the clerk within ten working days after being served with a copy of this Report and Recommendation.  See 28 U.S.C. § 636(b)(1).  Failure to object will constitute a waiver of objections on appeal.  *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTER this 24th day of June, 2009.

                                        s/ DAVID G. BERNTHAL
                                        U.S. MAGISTRATE JUDGE